**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                      )
                                      )

TIMOTHY TOMS,                )
                                      )

            Plaintiff,          )

                                        )     Civil Action No. 08-338 (RBW)

        v.             )

                                        )

OFFICE OF THE ARCHITECT OF THE    )
CAPITOL, <u>et al.</u>,          )

            Defendants.     )

                                        )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, Timothy Toms, brings this action under the First and Fifth Amendments and the Privileges and Immunities Clause of Article IV of the United States Constitution, the Architect of the Capitol Human Resources Act, 2 U.S.C. § 1831 (2006), and 2 U.S.C. § 60-1(a) and (b) (2006) against defendants Alan Hantman, Richard McSeveney, Arthur McIntye, Edgar Martinez, Gerald Walker and Rebecca Tiscione, named in their personal capacities, and against the Architect of the Capitol, Stephen Ayers, in his official capacity. Currently before the Court is the defendants' Motion to Dismiss Complaint ("Defs.' Mot.") pursuant to Federal Rule of Civil Procedure 12(b)(6), which the plaintiff opposes, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n").[1] For the reasons set forth below, the Court concludes that the defendants' motion should be granted.

---

[1]      The Court also considered the following documents that were filed in connection with this motion: (1) the plaintiff's Complaint ("Compl."); (2) the defendants' Memorandum in Support of Defendants' Motion to Dismiss ("Defs.' Mem."); and (3) the defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply").

# I.  BACKRGOUND

## A.    Factual Background

Viewing the evidence in the light most favorable to the plaintiff, the facts alleged in the

complaint are as follows.

On November 1, 1999, the plaintiff was appointed to a GS-13 auditor position in the

Office of the Inspector General of the Office of the Architect of the Capitol ("AOC").

Complaint ("Compl.") ¶ 12.  Defendant McIntye, Inspector General of the AOC, was the

plaintiff's first-line supervisor, id. ¶ 15, and defendant Hantman, then the Architect of the

Capitol, was the plaintiff's second-line supervisor, id.  In April 2003, the plaintiff "was

[]assigned to [work out of] the 'trailer' located on the grounds of the West Front" of the United

States Capitol (the "West Front Trailer").  Id. ¶ 41.  Tap water was provided to the West Front

Trailer, but the plaintiff was not advised "that [it] was not potable and was not to be drunk."  Id.

¶ 43.  The plaintiff was not made aware that the tap water should not be consumed until July

2003, at which time he had already been drinking the non-potable water for approximately four

months.  Id. ¶ 46.  To remedy this situation, the plaintiff requested approval of a "purchase order

requisition for bottled water and a cooler for use of the occupants of [the] West Front Trailer."

Id. ¶ 48.

"After [a] long delay, on or about January/February 2004, bottled water and a water

cooler w[ere] provided [to the plaintiff] and the other occupants of the West Front Trailer."  Id. ¶

52. The bottled water and water cooler were placed in a kitchen area for general use.  Id. ¶ 53.

However, Serena Coleman, Director of the Workforce Planning and Management Section of the

Human Resources Department, became "displeas[ed]" by the amount of water consumed by

Capitol Police Officers and moved the bottled water and water cooler "into the outer office of the Workforce Planning and Management Section of the West Front Trailer." Id. ¶ 54.  This move "depriv[ed] the police officers of [the] potable water and requir[ed] the [p]laintiff to enter the office of the Workplace Planning and Management Section to avail himself of the potable water." Id. ¶ 54.  On October 6, 2004, after learning that the Workplace Planning and Management Section would soon move out of the West Front Trailer, the plaintiff moved the bottled water and water cooler into his office in the West Front Trailer. Id. ¶¶ 55-56.  Shortly thereafter, the plaintiff "was confronted by an angry, loud and aggressive Director Coleman who forcibly attempted to enter" his office "and retrieve the bottled water and water cooler," id. ¶58, but the plaintiff "refused Director Coleman's forcible attempt to enter into his 'office[,]'" id. ¶ 59.  A Capitol Police Officer then "removed Director Coleman from the area . . . [and] ordered the [p]laintiff to stay within his office and to write a statement respecting the incident." Id. ¶ 60. Thereafter, the plaintiff was arrested and charged "with Simple Assault on the person of Director Coleman." Id. ¶ 63.  After being released following his arrest, the plaintiff was told "not to report to work until further notice[,]" id. ¶ 66, and he learned by letter on October 12, 2004, that he had been placed on administrative leave, id. ¶ 67.

By letter dated October 24, 2004, the plaintiff's first-line supervisor, defendant McIntye, proposed that the plaintiff be terminated as a result of the incident involving Director Coleman. Id. ¶¶ 68-69.  On October 26, 2004, the United States Attorney's Office for the District of Columbia "'no papered,'" i.e., declined to prosecute, the criminal charge for which the plaintiff had been arrested. Id. ¶ 72.  Three days later, the plaintiff wrote to defendant McSeveney, the Chief Operating Officer of the AOC, informing him that the proposal to terminate the plaintiff's employment was based on erroneous facts and that the criminal charge against him would not be

prosecuted.  Id. ¶¶ 23, 73-74.  Nevertheless, on November 5, 2004, defendant McSeveney

agreed with defendant McIntye's proposal to terminate the plaintiff's employment.  Id. ¶ 75.

The plaintiff then requested an administrative hearing on his termination pursuant to

Chapter 752 of the AOC Human Resource Manual, and the hearing was held on February 2,

2005.  Id. ¶¶ 76, 82.  The plaintiff was represented by counsel at the hearing, id. ¶¶ 83, 85, and

the AOC was represented by defendant Martinez, an AOC attorney, and defendant Walker, the

AOC Chief Employee Relations Specialist, id. ¶¶ 24-25.  At the hearing, the plaintiff had the

ability to present his own witnesses and to cross-examine the witnesses called by the AOC.  Id.

¶¶ 93-94; Compl., Ex. 1 ("AOC Administrative Hearings: Proposed Terminations, A Guide for

AOC Employees" ("AOC Guide")) at 9.  The plaintiff's counsel chose to call as his witness the

Capitol Police Officer who had arrested the plaintiff, and his attorney cross-examined Director

Coleman and defendant McIntye, who were called as witnesses by the AOC.  Compl. ¶¶ 93-97.

The plaintiff's counsel also had the opportunity to present a "closing statement" in "response to

the Office's charges and the penalty proposed."  Compl., Ex. 1 (AOC Guide) at 9.

According to the plaintiff, "[s]tatements were provided to USCP Police Officers and/or

USCP Detectives by the alleged victim and witnesses[,] which [were not] provided [to the

plaintiff] prior to the commencement of the administrative hearing on February 2, 2005."

Compl. ¶ 87.  They were not provided even though "at the commencement of the hearing on

February 2, 2005, [the plaintiff's counsel] requested a copy of [these] statements."[2]  Id. ¶ 88.

The plaintiff's counsel also requested a copy of the tape recording of the hearing from

defendants Walker and Martinez, but it was not provided.  Id. ¶¶ 85-86.  Moreover, the plaintiff

---

[2]      The plaintiff does not identify who actually made these statements or what these individuals said;
nor does the plaintiff allege that these statements were in the possession of the AOC or its counsel, or that
these statements were used against him at the hearing or as a basis for terminating his employment.  See
Compl. ¶ 87-88.

did not receive a copy of the Findings of Fact and Recommendations of the AOC Hearing

Officer (the "Hearing Officer's report"), even though it also was requested.  Id. ¶ 101-02.

On February 24, 2005, defendant McSeveney, on behalf of the AOC, sent the plaintiff a

letter indicating that his employment with the AOC was to be terminated.  Id. ¶ 98.  The plaintiff

received this letter on March 1, 2005, and his termination became effective on March 4, 2005.

Id.  Subsequent to the administrative hearing, the plaintiff, "by [a] March 10, 2005 letter to

[d]efendant Walker and two additional oral requests thereafter," requested a copy of the tape

recording of the administrative hearing and a copy of the Hearing Officer's report.  Id. ¶ 101.

Defendant Walker advised the plaintiff at all times that the tape was unavailable and that he was

not entitled to a copy of the report.  Id. ¶ 102.

**B.**     **Toms I**

Unsatisfied with the procedures and events leading up to and following his termination,

the plaintiff filed a complaint in this Court on October 6, 2005, against then-Architect Hantman

and defendant McIntye, along with a number of other employees of the AOC in their personal

capacities.  See Toms v. Hantman ("Toms I"), No. 05-1981 (D.D.C. Feb. 15, 2007).[3]  There, the

plaintiff brought Bivens actions against the defendants,[4] alleging, inter alia, that he had been

deprived of his Fifth Amendment right to procedural due process because "'[t]here is no appeal

from the [AOC's termination] process, and the hearing officer . . . produced a report which [the

plaintiff] has never seen.'"  Id. at 9.  Judge Friedman dismissed the plaintiff's complaint in its

entirety on Feb. 15, 2007, ruling that "[the] plaintiff was afforded procedural due process in this

matter. . . . Neither an appeals process nor a final report available to the employee are required

---

[3]        A copy of the Toms I complaint and the Court's decision in that case has been submitted with the
Memoradum in Support of Defendants' Motion to Dismiss as Defendants' Exhibits 2 and 3, respectively.

[4]        See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 408 U.S. 388 (1971).

for constitutionally adequate procedural due process – [the] plaintiff was entitled to, and received, notice and an opportunity to be heard." Id. at 9.  The plaintiff appealed the decision of the Court, but the appeal was dismissed for lack of prosecution.  Defs.' Mem. at 6.

**C.      Toms II**

Unsatisfied still with his termination, the plaintiff filed the present action on February 7, 2008.  The plaintiff alleges in his complaint that he was terminated from his auditor position with the AOC by the defendants "absent a preponderance of the evidence" in violation of his Fifth Amendment right to substantive due process and the AOC employee grievance procedures promulgated by Chapter 752 of the AOC's Personnel Manual in accordance with 2 U.S.C. § 1831 (2006) and 2 U.S.C. §60-1 (2006).  Compl. ¶ 116.  The plaintiff further alleges that the defendants, in violation of the plaintiff's First Amendment right of access to the courts, his Fifth Amendment right to procedural due process and equal protection, his rights under the Privileges and Immunities Clause of Article IV of the Constitution, and the procedures promulgated by Chapter 752 of the AOC Personnel Manual in accordance with 2 U.S.C. § 1831 and 2 U.S.C. §60-1, refused to provide the plaintiff with the following: (1) a copy of a tape recording of the administrative hearing of February 2, 2005, when he was recommended for termination; (2) "alleged victim and witness transcripts provided by the United States Capitol Police Officers and/or Detectives" in defiance of an Order of the Hearing Officer; and (3) a copy of the decision of the Hearing Officer's report issued following the February 2, 2005, administrative hearing. Id. ¶¶ 104-28.  The plaintiff seeks compensatory damages and injunctive relief (reinstatement to his GS-13 auditor position) from the AOC, and $15,000,000 in punitive damages from the defendants sued in their personal capacities.  Id. at 31-33.  For the reasons that follow, the Court must grant the defendants' motion to dismiss the complaint.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff properly has stated a claim" upon which relief can be granted. Woodruff v. DiMario, 197 F.R.D. 191, 193 (D.D.C. 2000). For a complaint to survive a Rule 12(b)(6) motion, it need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and which is sufficient to "give the defendant fair notice of what the claim is and the grounds on which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). "Although detailed factual allegations are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the grounds of entitlement to relief, a plaintiff must furnish more than labels and conclusions or a formulaic recitation of the elements of a cause of action." Hinson ex rel N.H. v. Merritt Educ. Ctr. ("Hinson"), 521 F. Supp. 2d 22, 27 (D.D.C. 2007) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Thus, "the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Hinson, 521 F. Supp. 2d at 27 (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Therefore, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he complaint must be liberally construed in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotation marks and citations omitted), and the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice[,]" E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (footnote omitted). And, "[a] dismissal with

prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted).

Finally, a court in this District, at least when the plaintiff is represented by counsel, may consider as conceded any arguments raised by a defendant's Rule 12(b)(6) motion that are not addressed in a plaintiff's opposition.  See Tnaib v. Document Tech., Inc., 450 F. Supp. 2d 87, 91 (D.D.C. 2006) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded."), (citing Fox v. Am. Airlines, Inc., No. 02-2069, 2003 WL 21854800 at *2 (D.D.C. Aug. 5, 2003)), aff'd, 389 F.3d 1291 (D.C. Cir. 2004); Stephenson v. Cox, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) (dismissing various counts of complaint as conceded, noting that "[t]he court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss.").

## III.  LEGAL ANALYSIS

### A.     The Defendants' Statute of Limitations Challenge

The defendant argues that because "the only allegedly unlawful conduct that took place within three years of February 27, 2008, was defendant Hantman's decision to terminate [the] plaintiff's employment[,]" the complaint is barred against the remaining defendants named in their personal capacities by the three-year statute of limitations applicable to Bivens claims of the type brought by the plaintiff.  Defs.' Mem. at 18-19; see D.C. Code § 12-301(4), (8) (2006) (creating one-year statute of limitations for "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment," and also a three-year limitations period for other claims "for which a limitation is not otherwise specially prescribed"); Bame v.

Clark, 466 F. Supp. 2d 105, 108 (D.D.C. 2006) ("In this Circuit, the state of the law is that the

three-year statute of limitations found in § 12-301(8) applies to most Bivens actions, unless the

claim is for constitutional torts specifically listed in [D.C. Code] § 12-301(4)." (quoting Banks v.

Chesapeake & Potomac Tel. Co., 802 F.2d 1416, 1428-29 (D.C. Cir. 1986)).  The plaintiff argues

in response that the relevant date for the accrual of his claims against the individual defendants is

not the date of the administrative hearing, but rather "the conclusion of the disciplinary action[,]"

that is, the date when he received the AOC's final decision terminating his employment, which

was March 1, 2005.  Compl. ¶ 10; Pl.'s Opp'n at 33-34.

Although a defendant may raise the affirmative defense of non-compliance with an

applicable statute of limitations in a pre-answer motion to dismiss, the District of Columbia

Circuit has "repeatedly held . . . [that] courts should hesitate to dismiss a complaint on statute of

limitations grounds based solely on the face of the complaint."  Firestone, 76 F.3d at 1209

(citations omitted).  Indeed, "because statute of limitations issues often depend on contested

questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-

barred."  Id.  Contrary to the defendants' arguments, the plaintiff has pleaded that allegedly

unlawful conduct by other defendants in their individual capacities took place within the

limitations period, see Compl. ¶ 98 (alleging that AOC Chief Operating Officer McSeveney

made the final decision to terminate the plaintiff's employment); id. ¶ 101-02 ("[B]y March 10,

2005 letter to [d]efendant Walker and two additional oral requests thereafter, [the plaintiff]

requested a copy of the tape recording of the administrative hearing and a copy of the Hearing

Officer's decision . . . [but defendant Walker] advised [the] [p]laintiff at all times that [these

items were not available to the plaintiff]."), as it is not clear from the complaint that the

plaintiff's claims accrued for statute of limitations purposes until he received the final decision

regarding his termination, see Harris v. Ladner, 127 F.3d 1121, 1125 (D.C. Cir. 1997) (noting that for actions arising from termination of an employee, "limitations periods normally commence when the employer's decision is made" (quoting Del. State Coll. v. Ricks, 446 U.S. 250, 261 (1980)).  Thus, because it does not appear on the face of the complaint that this action is conclusively time-barred, the Court must decline to dismiss the complaint on statutory limitations grounds.

**B.      Defendants Hantman and McIntye's Res Judicata Challenge**

Defendants Hantman and McIntye argue that because "[the plaintiff has] already sued [these defendants] in their individual capacities [in Toms I] based on his termination and the administrative process underlying that decision," res judicata (claim preclusion) bars the present suit against them with regards to all the plaintiff's claims.  Defs.' Mem. at 8-9.  The doctrine of res judicata, which acts to "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and to prevent serial forum-shopping and piecemeal litigation," Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981), requires a plaintiff to "present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence," U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 205 (D.C. Cir. 1985) (citation omitted). The "technical elements" of res judicata are satisfied when the first case "[is] a final judgment on the merits . . . involve[ing] the same claims and the same parties as [the subsequent case]."  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 (1981).  Thus, "[f]or res judicata to apply, it is well settled that four requirements must be fulfilled: 1) the parties must be identical in both suits; 2) the prior judgment must have been rendered by a court of competent jurisdiction; 3) there must have been a final judgment on the merits; and 4) the same cause of action must be involved in both cases."  Brannock Assocs., Inc. v. Capitol 801

Corp., 807 F. Supp. 127, 134 (D.D.C. 1992); see also Apotex, Inc. v. FDA, 393 F.3d 210, 217

(D.C. Cir. 2004) (discussing the requirements of res judicata, noting that "[w]hether two cases

implicate the same cause of action turns on whether they share the same nucleus of facts")

(internal quotation marks and citations omitted).

     The defendants point out that "[a]t th[e] time [the plaintiff filed Toms I, he] was aware of

all the facts underlying his claims in [the present action], and his claims in both lawsuits are

based on the same nucleus of facts." Defs' Mem. at 9. Thus, the defendants argue, not only is

the plaintiff barred from "re-litigating his [procedural] due process claims against [defendants

Hantman and McIntye,]" but "[r]es judicata also prevents [the plaintiff] from raising [new

substantive due process and statutory] claims against them because he plainly could have (and

should have) done so in Toms I." Id. In response, the "[p]laintiff does not dispute that the

standards for [res judicata] have been met," Pl.'s Opp'n at 8, but instead seeks to establish that a

number of exceptions to res judicata relieve the judgment in Toms I of preclusive effect, id. at 1.

Because the Court concludes that the plaintiff's claimed exceptions to res judicata have no

application to the present action, it accordingly must dismiss the claims against defendants

Hantman and McIntye with prejudice.

     The Supreme Court of the United States has "stressed that the doctrine of res judicata is

not a mere matter of practice or procedure inherited from a more technical time than ours. It is a

rule of fundamental and substantial justice, of public policy and of private peace, which should

be cordially regarded and enforced by the courts." Moitie, 452 U.S. at 401 (holding that district

court's dismissal for failure to state a claim on res judicata grounds was proper as to the

plaintiff's federal claims). However, in certain situations, a court may deny preclusive effect to a

judgment where doing so would allow res judicata to be employed as "an instrument of wrong."

Sys. Fed'n No. 91 v. Wright, 364 U.S. 642, 647 (1961) (citations omitted).  Although the

requirement of a full and fair opportunity to litigate is most often discussed in the context of

collateral estoppel (issue preclusion), "the invocation of res judicata . . . is subject to the same

limitation."  Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 n.22 (1982).  Thus, "res judicata

does not bar parties from bringing claims based on material facts that were not in existence when

they brought the original suit," Apotex, 393 F.3d at 218, or where "changed circumstances have

altered the legal issues involved," Wolfe v. Froehlke, 358 F. Supp. 1318, 1319 (D.D.C. 1973).

Moreover, an exception to res judicata has been recognized where it "would have been utterly

impracticable to join [the claim] in an earlier suit."  Apotex, 393 F.3d at 218 (citation omitted).[5]

   The plaintiff argues first that the existence of "materially changed circumstances that

implicate controlling facts" and that "[have created] new legal conditions" compel the conclusion

that he was prevented from "hav[ing] a full and fair opportunity to procedurally, substantively,

and evidentially pursue his claims in Toms I[.]"  See Pl.'s Opp'n at 1, 8, 10, 12-13.  After Toms I

– indeed, four months after the present action was filed – a previously confidential discovery

ruling based on a supposed judicial admission against interest by counsel for the AOC in an

unrelated administrative hearing involving the proposed termination of another AOC employee,

see Pl.'s Opp'n, Ex. 2 (AOC Office of Compliance, Robert Solomon v. AOC transcript) at 7-9,

came to light and establishes that the Hearing Officer's report is not entitled to any privilege or

confidentiality, contrary to the position taken in the plaintiff's termination proceedings, see Pl.'s

Opp'n at 8-10, 12-13.  The plaintiff argues that this "judicial admission against interest" by an

AOC official constitutes "crucial evidence" that was "legally unavailable" to the plaintiff at the

time of Toms I, id. at 10, thereby creating "materially changed factual and legal circumstances

---

[5]     This list of exceptions to res judicata is not exhaustive and is confined to those asserted by the
plaintiff.

that . . . implicate the necessity of providing an [AOC] employee with the [Hearing Officer's report] to comply . . . with the process due an [AOC] employee," id. at 11-12.

The plaintiff's position is without merit.  Only "on rare occasions" involving "paramount questions of constitutional law or exclusive jurisdiction" will subsequent judicial pronouncements on matters of law serve as a basis for overriding the bar of res judicata. Hardison, 655 F.2d at 1289-90.  Contrary to the plaintiff's assertions that the judicial admission against interest here constitutes a "major doctrinal shift," Pl.'s Opp'n at 17, there simply has been no such change in controlling law which counsels against the application of res judicata in this action.  Indeed, in litigation in this Court arising from the administrative hearing at which the judicial admission against interest was made, another member of this Court held that "[constitutionally-adequate] due process does not require that a [H]earing [O]fficer's report be made available to an employee."  Solomon v. Office of the Architect of the Capitol, 539 F. Supp. 2d 347, 351 (D.D.C. 2008), aff'd, No. 08-5152 (D.C. Cir. Dec. 12, 2008) (per curiam); see also Solomon, No. 08-5152 (affirming the trial court, holding that "[t]he essential requirements of due process . . . are notice and an opportunity to respond.  Appellant was provided adequate notice of the reasons for his termination [from his employment with the AOC] and an opportunity to respond both in writing and at an administrative hearing where he was represented by counsel.") (internal quotation marks and citations omitted).[6]  Moreover, despite the plaintiff's protests to

---

[6]     The plaintiff also argues by analogy to the Sixth Amendment to the United States Constitution that because he did not yet know of the judicial admission against interest during the litigation of Toms I, "there was a breakdown in the adversary process that rendered the result of [that] proceeding . . . unreliable as it fell below an objective standard of reasonableness and that there is a reasonable probability that, [had the plaintiff known of that admission], the result of [Toms I] would be different." Pl.'s Opp'n at 18.  The proceedings of Solomon belie this argument, as despite the judicial admission against interest, Judge Lamberth found, and the D.C. Circuit affirmed, that as a matter of constitutional law, the plaintiff was not entitled to a copy of the Hearing Officer's report, and accordingly dismissed his complaint with prejudice for failure to state a claim upon which relief could be granted.  See Solomon,

(continued…)

the contrary, the exact same material facts exist now as existed at the time of Toms I, the effect

of the judicial admission being only to streamline his ability to acquire the Hearing Officer's

report through the judicial discovery process.[7]

Finally, the plaintiff argues that "it was totally impracticable . . . to bring a substantive

due process claim in Toms I absent the Hearing Officer's [report, because the plaintiff] could not

argue the merits of his termination without the evidence [in that report] upon which his

termination was based."  Pl.'s Opp'n at 13.  This argument fails as well.  There is nothing to

indicate, and the plaintiff has not alleged, that he could not have pled a substantive due process

violation claim in Toms I and used the discovery process to obtain the report in that action.  See

generally Compl.; Pl's Opp'n.  Indeed, the Hearing Officer's report appears well within the

scope of initial disclosures required by the Federal Rules of Civil Procedure.  See Fed. R. Civ. P.

26(a), (b). Even if the process to obtain the Hearing Officer's report would have been

substantially more protracted in Toms I than it would be today, the difficulty posed to the

plaintiff at that time was not "utter impracticability."  Compare Apotex, 393 F.3d at 218 (barring

the plaintiff's suit on res judicata grounds, finding that joining an alternative claim for relief

based on the exact same operative facts, even if "diametrically opposed" to the theory advocated

in the previous case, would not have been "utterly impracticable"), with Velikonja v. Ashcroft,

355 F. Supp. 2d 197, 204 (D.D.C. 2005) (holding that because the "plaintiff did not receive a

right-to-sue letter resulting from [her] complaint until . . . only three days before the close of

---

(…continued)
539 F. Supp. 2d at 351; Solomon, No. 08-5152 (D.C. Cir. Dec. 12, 2008).  Thus, there is no reason to
expect the proceedings in Toms I to have been any different had the plaintiff then known of the judicial
admission against interest upon which he relies.

[7]      Tellingly, the "crucial evidence" the plaintiff relies on in attempting to establish an exception to
res judicata surfaced four months after the filing of this action. Pl.'s Opp'n at 2.  Accordingly, nothing at
all had changed when the plaintiff filed the instant complaint.

discovery in [the previous action], it would have been 'utterly impracticable' for her to join the new claims in her first action") (citation omitted).  Furthermore, it is strange indeed that the plaintiff argues that it was totally impracticable for evidentiary reasons to allege a substantive due process violation regarding his termination in Toms I, and yet the judicial admission against interest that is so important to this argument came to his attention for the first time four months after the filing of the complaint alleging that exact violation.  Thus, it would not have been utterly impracticable for the plaintiff to bring the present substantive due process claim against defendants Hantman and McIntye in Toms I.

For the foregoing reasons, the plaintiff has failed to establish an exception to the application of res judicata.  Given the plaintiff's concession that the elements of res judicata are otherwise satisfied, Pl.'s Opp'n at 8, the Court finds that the claims against defendants Hantman and McIntye are barred, and must be dismissed with prejudice.

## C.	The Remaining Defendants' Collateral Estoppel Challenge to the Plaintiff's Procedural Due Process Claims

The defendants argue that "[c]ollateral estoppel bars [the plaintiff's] Fifth Amendment [procedural] due process claims against all of the [d]efendants."  Defs.' Mem. at 9.  Under the doctrine of collateral estoppel, "a final judgment on the merits in a prior suit precludes subsequent relitigation of [legal and factual] issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action."  Nextwave Pers. Commc'ns, Inc. v. FCC, 254 F.3d 130, 147 (D.C. Cir. 2001) (quoting I.A.M. Nat'l Pension Fund Ben. Plan A v. Indus. Gear Mfg. Co., 723 F.2d 944, 946-47 (D.C. Cir. 1983)).  There are three elements necessary for collateral estoppel to apply: "(1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent

jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination" (that is, the party against whom preclusion is asserted must have had a full and fair opportunity to litigate in the prior case). Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992); see also Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 333 (1971) (noting that before a defense of collateral estoppel can prevail, a plaintiff "must be permitted to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time.") (internal quotation marks and citations omitted).  There is no requirement that the party asserting collateral estoppel must have been a party in the first case, though courts look with greater skepticism on attempts by a party not present in a prior case to employ collateral estoppel offensively.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331-32 (1979).  Here, however, the defendants seek to assert collateral estoppel in a defensive, as opposed to an offensive, posture.

The defendants contend that the decision in Toms I to dismiss with prejudice the plaintiff's procedural due process claim on the grounds that the plaintiff received constitutionally adequate process prior to his termination should preclude its relitigation in the instant action. See Defs.' Mem. at 9-11; Toms I, No. 05-1981 at *4, 9  (finding that "[n]either an appeals process nor a final report available to the employee are required for constitutionally adequate procedural due process – [the] plaintiff was entitled to, and received, notice and an opportunity to be heard." (emphasis added)); supra Part I.B.  The plaintiff "does not dispute" that the procedural due process issue now being raised is the same issue that was raised, litigated, determined and necessary to the result in Toms I, again "contend[ing] [only] that he did not have a full and fair opportunity to litigate Toms I."  Pl.'s Opp'n at 8.  The plaintiff marshals the same

legal arguments in opposition to the application of collateral estoppel as he does in his attempt to establish an exception to res judicata (indeed, the plaintiff makes little distinction between the two).  See id. at 8-18.  Thus, for the reasons expressed in the previous section – namely, that no material changed circumstances, major doctrinal shift in applicable law, or breakdown in the adversarial process have occurred – the plaintiff has failed to establish that he was not afforded a full and fair opportunity to litigate his claims in Toms I, see Id., and the Court therefore must dismiss his procedural due process claim against all the remaining defendants with prejudice.[8]

## D.    Concessions of Defense Challenges

As discussed above, "[w]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded."  Tnaib, 450 F. Supp. 2d at 91 (citations omitted); see also Fox, 389 F.3d at 1295 (finding no abuse of discretion where district court granted motion to dismiss based on reasoning that plaintiffs' failure to respond to motion within prescribed time renders motion conceded).  Here, the plaintiff's counsel has neglected in his Opposition to address the defendants' carefully briefed arguments advocating for the dismissal of the plaintiff's First Amendment claim, Privileges and Immunities Clause claim, Equal Protection Clause claim, Human Resources Act claim, and the plaintiff's claims for money damages against the defendants in their individual capacities based on Bivens, 403 U.S. 388.[9]  The plaintiff also has failed to respond to the

---

[8]      Although all the plaintiff's claims against defendants Hantman and McIntye have been dismissed on res judicata grounds, see id. at 8-10, the dismissal of the plaintiff's procedural due process claim on collateral estoppel grounds applies equally to them as well.

[9]      Regarding the defendant's arguments for dismissal of the plaintiff's Bivens claims, the plaintiff notes in his Opposition only that "the [d]efendants . . . are not entitled to qualified immunity from the Bivens claim of the [p]laintiff."  Pl.'s Opp'n at 24.  This is not responsive to the defendants' argument that the existence of a comprehensive remedial scheme for AOC employees to contest their proposed

(continued…)

defendants' argument that the Architect of the Capitol (defendant Ayers), in his official capacity, is entitled to Sovereign Immunity from suits for money damages brought by terminated employees. Compare Def.'s Mem. at 11-17, 19-24, with Pl.'s Opp'n. Accordingly, the Court will grant the defendants' motion to dismiss with respect to all of these claims. See Fox, 389 F.3d at 1295 (affirming dismissal on this basis, noting that "we have often observed, that where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule") (internal quotation marks and citation omitted); Tnaib, 450 F. Supp 2d at 91 (dismissing plaintiff's claims under Title VII and the District of Columbia Human Rights Act as conceded).[10]

**E.      The Defendants' Substantive Due Process Challenge.**

The only claims that now remain alive are the plaintiff's substantive due process claims against the defendant Ayers in his official capacity as the Architect of the Capitol seeking injunctive relief – reinstatement to his position as an auditor with the AOC. See Compl. ¶¶ 113, 117. As to these claims, the plaintiff alleges: (1) that the refusals by officers of the AOC to

_____

(…continued)

terminations, created in accordance with the requirements of 2 U.S.C. § 1831, forecloses the plaintiff's attempt to assert Bivens claims against the individual defendants. See Defs.' Mem. at 11-12.

[10]      Because the plaintiff has conceded by failing to address in his opposition the defendants' arguments advocating dismissal on the merits of the plaintiff's Human Resources Act claims, his Bivens claims against the defendants named in their individual capacities, and his claims for money damages against defendant Ayers in his official capacity as the Architect of the Capitol, these claims will be dismissed with prejudice. Consequently, no claims against the individual defendants remain, as each claim lodged against them seeks only money damages and is based, ultimately, on Bivens. On the other hand, the defendants' arguments advocating dismissal of the plaintiff's claims for injunctive relief against the Architect of the Capitol in his official capacity based on the First Amendment right of access to the courts, the Fifth Amendment right to equal protection, and the Privileges and Immunities Clause of Article IV of the Constitution do not attack the merits of the plaintiff's position but only the insufficiency of the complaint. See Def.'s Mem. at 16-18. Thus, the Court will dismiss these claims without prejudice.
Accordingly, only the plaintiff's substantive due process claims for injunctive relief against defendant Ayers in his official capacity as the Architect of the Capitol remain, and each claim shall be addressed in the final section of this memorandum opinion.

provide him with "alleged victim and witness statements provided by the United States Capitol Police Officers and/or Detectives," a tape recording of the administrative hearing, and the Hearing Officer's report constitute a denial of substantive due process, see id. ¶¶ 105, 109, 112,; and (2) that he was terminated from his auditor position "absent a preponderance of the evidence," also in violation of his Fifth Amendment right to substantive due process, id. ¶ 116.

"[S]ubstantive due process constrains only egregious government misconduct," Decatur Liquors v. District of Columbia, 478 F.3d 360, 363 (D.C. Cir. 2007), and a substantive due process violation will only occur where the government's conduct is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," Butera v. District of Columbia, 235 F.3d 637, 651 (D.C. Cir. 2001) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  The Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. . . . [Rather,] conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."  Lewis, 523 U.S. at 849.  Here, the defendants argue that the plaintiff "obviously disagrees with the Architect's decision to terminate his employment, but the [c]omplaint is bereft of any allegation that would support a finding of egregious misconduct by the Architect in making this decision."  Defs.' Mem. at 16.  Because the Court agrees that the plaintiff has failed to allege any government conduct that shocks the conscience, the substantive due process claims against defendant Ayers in his official capacity must be dismissed.[11]

---

[11]     As a threshold matter, for a plaintiff to allege a substantive due process violation, he must allegedly have been arbitrarily deprived of a fundamental right or liberty or property interest that is based in the United States Constitution.  See Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are

(continued…)

First, the plaintiff alleges that the supposed procedural improprieties accompanying his administrative hearing – the refusal by officers of the AOC to provide the plaintiff with "alleged victim and witness statements provided by the United States Capitol Police Officers and/or Detectives," a tape recording of the administrative hearing, and the Hearing Officer's report – deprived him of substantive due process.  Compl. ¶¶ 103-14, 119-22 (Counts I through III and V through VII).  Not only does the plaintiff appear to be recasting his failed procedural due process claims as substantive due process claims, but these allegations simply do not meet the stringent "conscience-shocking" test for substantive due process violations.  Compare Solomon, 539 F. Supp. 2d at 350-51 (dismissing former AOC employee's substantive due process claim, as allegations that the Hearing Officer's report was withheld were insufficient to meet the

_____

(…continued)
created only by the Constitution.").  The plaintiff argues that the AOC termination procedures have created a due process property interest in continued employment at the AOC that entitles him to both procedural and substantive due process. Pl.'s Opp'n at 19, 24.  However, as another member of this Court has noted, "there is substantial doubt as to whether one's interest in public employment is protected by substantive due process." Winder v. Erste, 511 F. Supp. 2d 160, 183 (D.D.C. 2007) (collecting cases and finding that "employment interests are not protected by substantive due process[,]" but declining to decide the plaintiff's claim on that ground), aff'd in part and rev'd in part on other grounds, 2009 WL 1350761 (D.C. Cir. 2009); see also, e.g., McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994) ("Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause . . . . Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection."); Nicholas v. Penn. State Univ., 227 F.3d 133, 143 (3d Cir. 2000) (holding that termination of tenured state university professor was not subject to substantive due process protection, noting that "public employment as more closely analogous to those state-created property interests that this Court has previous deemed unworthy of substantive due process") (footnote omitted). Indeed, there is substantial doubt as to whether employment with the AOC creates even a procedural due process property interest.  Compare Commeree v. Hantman, No. 97-0242, 1999 WL 1611325 at *5 (D.D.C. Oct. 28, 1999) (holding that because "[a]ll employees of the AOC . . . are designated by statute to be part of the Excepted Service . . . [the plaintiff] fails to establish any property or liberty interest [in his AOC employment]"), aff'd, 25 F. App'x. 1 (D.C. Cir. Nov 21, 2001), with Vanover v. Hantman, 77 F. Supp. 2d 91, 101-04 (D.D.C. 1999) (reviewing administrative procedures afforded AOC employees and their statutory foundations, concluding that "[t]he Court has no difficulty finding that [the] plaintiff thus had a protected property right in his employment"), aff'd, 38 F. App'x 4 (D.C. Cir. Apr 17, 2002.). Because the Court need not reach this question in dismissing the plaintiff's substantive due process claims, it will assume without deciding that he has a substantive due process interest in continued employment at the AOC.  See Yates v. District of Columbia, 324 F.3d 724, 725-26 (D.C. Cir. 2003).

"conscience-shocking" test), [12] with <u>Rochin v. California</u>, 342 U.S. 165, 172 (1952) ("Illegally

breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was

there, the forcible extraction of his stomach's contents – this course of proceeding by agents of

government to obtain evidence is bound to offend even hardened sensibilities.  They are methods

too close to the rack and the screw to permit of constitutional differentiation. . . . [and therefore

amount to] conduct that shocks the conscience.").

Finally, the plaintiff alleges a substantive due process violation arguing that he was

terminated from his employment with the AOC "absent a preponderance of the evidence"

determination.  Compl. ¶ 116.  In support of this allegation, the plaintiff claims that "[this]

District Court in <u>Vanover v. Hantman</u>[], 77 F. Supp. 2d 91 (D.D.C. 1999), determined that [AOC

employees, under the Due Process Clause of the Fifth Amendment, are entitled to] . . . an

administrative hearing on the charges pursuant the 'preponderance of the evidence' as the

standard and a 'burden of proof' with the Defendant . . . AOC[.]"  Compl. ¶ 33.  While

acknowledging that the Architect must satisfy <u>some</u> burden of proof at a termination hearing, the

Court in <u>Vanover</u>, after careful review of AOC employee grievance and termination procedures,

determined simply that "[t]he procedures . . . reflect that the Hearing Officer must find that the

[AOC] <u>has presented evidence supporting the charge</u>."  77 F. Supp. 2d at 105-06 (emphasis

added).  Not once does the <u>Vanover</u> opinion mention the preponderance standard.  <u>See generally</u>

<u>id.</u>  Indeed, the <u>Vanover</u> Court explicitly accepted, and this Court agrees, that "rules of evidence

and burdens of proof that must be followed by a judicial body do not restrict the [H]earing

[O]fficer's conduct[,]" noting that "[t]here is no constitutional requirement that the hearing

---

[12]     Indeed, the District of Columbia Circuit noted that "[t]he merits of the parties' positions are so clear as to warrant summary action[,]" and accordingly affirmed the District Court's dismissal of the AOC employee's substantive due process claim.  <u>Solomon</u>, No. 08-5152 (D.C. Cir. Dec. 12, 2008).

provided follow all the rules applicable to a judicial proceeding."  Id. at 105-06.  Moreover, it is

not the Hearing Officer that makes the final decision as to an AOC employee's termination, but

the Architect of the Capitol himself; the Hearing Officer merely recommends a course of action

based on the administrative proceedings, and that recommendation constitutes but one of the

factors which the Architect of the Capitol considers when making his final decision.  See Defs.'

Mem., Ex. 1 (AOC Personnel Manual Ch. 752) at 11 ("[The final decision letter must] [a]ssure

the employee that the final decision was based on the reasons specified in the letters proposing

and concurring with the [termination,] the employee's response thereto[,] and, the Hearing

Officer's findings and recommendations.").  Save for his mistaken reliance on Vanover, the

plaintiff has not presented, and the Court has not found, any support that AOC employees may

be terminated only if the charges against them are proven by a preponderance of the evidence.[13]

See generally Compl.; Pl's Opp'n.

Accordingly, neither the plaintiff's perceived procedural deficiencies nor his insistence

upon the applicability of the preponderance standard of proof raise a substantive due process

violation, and therefore these claims must also be dismissed with prejudice.

---

[13]      The plaintiff has submitted with his Opposition a copy of a Hearing Officer's report from an
unrelated AOC termination hearing.  See Pl.'s Opp'n, Ex. 3 ("Hearing, Summary, Findings and
Recommendation by Hearing Officer Gloria Johnson, Nov. 29, 2003").  This report belies the plaintiff's
position, noting as it does that "[o]ne of the primary substantive elements [of just cause for termination] is
the production of substantial evidence that the employee actually engaged in the misconduct for which he
is being discharged or disciplined."  Id. at 10 (emphasis added).  As other members of this Court have
noted, the "substantial evidence" standard is usually understood to "require[] more than a scintilla, but
can be satisfied by something less than a preponderance of the evidence."  Feinerman v. Bernardi, 558 F.
Supp. 2d 36, 45 (D.D.C. 2008) (quoting FPL Energy Me. Hydro, LLC v. F.E.R.C., 287 F.3d 1151, 1160
(D.C. Cir. 2002).

## IV. CONCLUSION

For the foregoing reasons, the plaintiff has failed to allege any claim upon which relief may be granted, and accordingly his complaint must be dismissed in its entirety.[14]

_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[14]     An Order consistent with the Court's ruling accompanies this Memorandum Opinion.